### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

KEASHA S. McCAMPBELL                                    PLAINTIFF

VS.                                        CIVIL ACTION: 3:16cv330-CWR-MTP

COMMISSIONER OF SOCIAL SECURITY                         DEFENDANT

### REPORT AND RECOMMENDATION

Plaintiff Keasha S. McCampbell brings this action pursuant to 42 U.S.C. § 405(g), and seeks judicial review of a final decision of the Commissioner of the Social Security Administration denying her claim for social security disability insurance benefits. The matter is now before the Court on Defendant's Motion [14] to Affirm the Decision of the Commissioner. Having considered the pleadings, the record and the applicable law, the undersigned recommends that the Motion [14] be DENIED, and this case be remanded for further proceedings.

### PROCEDURAL HISTORY

On June 19, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging a disability due to migraines, degenerative disc disease, and knee problems with an onset date of December 20, 2008. (*See* Administrative Record [11] at 151, 168.)[1] This application was denied initially and upon reconsideration. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ([11] at 100.)

On May 23, 2014, a hearing was convened before ALJ Edgardo Rodriguez-Quilichini. ([11] at 33-65.) The ALJ heard testimony from the Plaintiff and vocational expert ("VE") David

---

[1]For ease of reference and pursuant to the Court's Order [7] directing filing of briefs, the administrative record is cited to herein by reference to the Court's docket number and docket

Pigue. ([11] at 34.) On July 30, 2014, the ALJ issued a finding that Plaintiff was not disabled. ([11] at 12-32.) Plaintiff appealed this decision to the Appeals Council. ([11] at 5-7.) The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. *Id.*

Plaintiff filed her Complaint on May 2, 2016, seeking judicial review pursuant to 42 U.S.C. § 405(g). *See* Complaint [1] The Commissioner answered the Complaint, denying that Plaintiff is entitled to any relief, and filed a Motion [14] to affirm the Commissioner's decision. The parties having briefed the issues in this matter pursuant to the Court's Scheduling Order [7], the matter is now ripe for decision.

## MEDICAL/FACTUAL HISTORY

Plaintiff was thirty-eight years old at the time of her alleged disability onset date. ([11] at 151.) Plaintiff completed high school and has past work experience as an electronics repairer and microcomputer support specialist. Plaintiff had a consistent work history prior to her alleged disability onset, with 7 years of military service and covered earnings accrued for all but two quarters between 1992 and 2008 (16 1/2 of 17 years). ([11] at 151; 155-56.)

The administrative record in this case contains voluminous medical documents from various providers. While these records reference multiple medical issues of the Plaintiff, the undersigned will outline in the sections below only those records pertaining to her migraine headaches, the condition which forms the basis for appeal.

## BURDEN OF PROOF

In *Harrell v. Bowen*, the Fifth Circuit detailed the shifting burden of proof that applies to

---

page number in the federal court record and not the Administrative Record page number.

disability determinations:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):
>
> 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>
> 2. An individual who does not have a 'severe impairment' will not be found to be disabled.
>
> 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
>
> 4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
>
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

862 F.2d 471, 475 (5th Cir. 1988). The claimant bears the burden at the first four steps, but the burden shifts to the Commissioner at step five. Once the Commissioner makes the requisite showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005). A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell,* 862 F.2d at 475 (citations omitted).

### ADMINISTRATIVE LAW JUDGE'S ANALYSIS

As an initial matter, the ALJ found that Plaintiff met the insured status requirements of

the Social Security Act through December 31, 2013. ([11] at 17.) At step one of the evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 20, 2008, the alleged onset date. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: back disorder, migraine headaches, knee pain, and carpal tunnel syndrome. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Part 4, Subpart P, Appendix 1. *Id.* In order to make a determination at step four, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC").[3] The ALJ found that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).[4] Specifically, the claimant can lift, carry, push and/or pull twenty(20) pounds occasionally and ten (10) pounds frequently. She can stand and walk for approximately six (6) hours and can sit for approximately six (6) hours in an 8 hour workday with normal breaks. She needs to alternate sitting and standing positions at half (12) hour intervals throughout the day. She could climb stairs, balance, stoop, kneel, crouch and craw occasionally, but should never climb ladders or scaffolds. This person could do handling and fingering occasionally. Due to migraine headaches, this person should avoid occasional exposure to bright lights while at work.

---

[2]The ALJ applied the evaluation process set forth in 20 C.F.R. §§ 404.1520(b)-(f) and 416.92(a).

[3]"Residual Functional Capacity" is defined in the Regulations as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. § 416.945.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

([11] at 18.)

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. ([11] at 26.) Finally, at step five, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy. The ALJ based this conclusion on Plaintiff's age, education, work experience, and RFC along with the Medical-Vocational Guidelines. These jobs include gate guard, call out operator, and telephone solicitor. ([11] at 27.) Accordingly, the ALJ found that Plaintiff was not disabled. *Id.* Plaintiff appealed and the Appeals Council denied her request for review.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to inquiry into (1) whether there is substantial evidence to support the Commissioner's findings and (2) whether the correct legal standards were applied in evaluating the evidence. *See* 42 U.S.C. § 405(g) *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id.* at 164 (citations omitted). However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted).

Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates

against" the Commissioner's decision. *Harrell,* 862 F.2d at 475. If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

***Issue No. 1: Whether the ALJ erred by failing to properly account for Plaintiff's migraines and subsequent rebound headaches in step 3.***

The ALJ determined at step two that claimant's migraine headaches were a "severe impairment." ([11] at 17.) At step 3, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any listed impairment. ([11] at 17.). Plaintiff argues that it is not apparent from the ALJ's opinion and the record that he compared her migraines to the appropriate listing.

Because there is no listing for migraine headaches, the ALJ was required to compare his findings with those of a "closely analogous listed impairment[ ]" *See* C.F.R. 20 § 404.1526(b)(2). At the time of the decision, the Social Security Administration used Listing 11.03 as being "closely analogous" to chronic migraine headaches. *See Mesecher v. Berryhill*, No. 4:15-CV-0859-BL, 2017 WL 998373, at *3 (N.D. Tex. Mar. 15, 2017).

When the ALJ rendered his decision in July 2014, Listing 11.03 provided:

Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. § 11.03 Pt. 404, Subpt. P, App. 1 (effective Feb. 26, 2014, to December 8, 2014)[5]

Claimant directs the Court to SSA National Q&A 09-036 (posted Dec. 15, 2009),[6] which states that "Only active Q&As may be used as guidance in the adjudication of a current claim" and "listing 11.03 (Epilepsy—nonconvulsive epilepsy) is still the most analogous listing for considering medical equivalence." (*See* [13-1].) Through Q&A 09-036, the Social Security Administration "clarified which 'essential components of listing 11.03' may be most relevant

---

[5] The listings of impairments has undergone revisions subsequent to the commissioner's final decision but the undersigned finds no need to consider subsequent amendments to Listing 11.03 to resolve the present appeal. The SSA published new listings for Neurological Disorders for adults (Listings 11.00), effective September 29, 2016. 81 Fed. Reg. 43048 (July 1, 2016). https://www.gpo.gov/fdsys/pkg/FR-2016-07-01/pdf/2016-15306.pdf. Listing 11.03 (non-convulsive epilepsy) is no longer a listing and was replaced by 11.02 (formerly convulsive epilepsy) which is now Epilepsy.

However, the Social Security Admiration noted in this new amendment that "[w]e expect that Federal courts will review the Commissioner's final decisions using the rule that were [sic] in effect at the time we issued the decisions. If a court reverses the Commissioner's final decision and remands a case for further administrative proceedings after the effective date of the final rule, we will apply the final rule to the entire period at issue in the decision we make after the court's remand." *See Id.*

As such, it appears that on remand that the ALJ should apply the new Listing 11.02 as the Commissioner's Program Operations Manual System ("POMS") now identifies revised Listing 11.02 as being closely analogous to chronic migraine headaches. *See* POMS § DI 24505.015(B)(7)(b)(Second Example) ("A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her ADLs. The claimant takes medication as her doctor prescribes. The findings of the claimant's impairment are very similar to those of 11.02, Epilepsy, Dyscognitive seizures. Therefore, 11.02 is the most closely analogous listed impairment. Her findings are at least of equal medical significance as those of the most closely analogous listed impairment. Therefore, the claimant's impairment medically equals listing 11.02.D.1.")

[6] Q&A 09-036 is "yet another guidance document maintained by the Commissioner in addition to the Regulations, Rulings, and POMS." *Merritt v. Comm'r of Soc. Sec.*, No. 15-CV-6633-CJS, 2016 WL 6246436, at *6 (W.D.N.Y. Oct. 26, 2016).

when considering whether a claimant's migraine headaches meet or medically equal a listing."

*Dunlap v. Colvin*, No. 15-CV-02139-NYW, 2016 WL 5405208, at *9 (D. Colo. Sept. 28, 2016).

The Q&A recognizes "significant changes in the diagnosis and treatment of migraine headaches"

and that not all aspects of Listing 11.03 as set out for epilepsy apply in the context of evaluating

migraine headaches. (*See* [13-1] at 2-4.) The Q&A explains that a "diagnosis of migraine

headaches requires a detailed description from a physician of a typical headache event (intense

headache with more than moderate pain and with associated migraine characteristics and

phenomena)." *Id*. at 2.

The Q&A sets out the following non-exclusive list of "clinically accepted indicators of

the diagnosis": (1) a headache lasting "4 to 72 hours if untreated or unsuccessfully treated"; (2)

"Unilateral, pulsating (throbbing) quality" and moderate or severe pain, worsened by routine

physical activity or causing avoidance of such activity; and (3) experiencing nausea, vomiting,

photophobia, or phonophobia during the headache (only one needs to be experienced). ([13-1] at

3-4.)[7]

The Commissioner does not contend or argue that Q&A 09-036 was inactive or

inapplicable at the time the ALJ made his determination, thus, the Court may utilize it in

addressing the current appeal. *See Dunlap*, 2016 WL 5405208, at *9 (utilizing Q&A 09-036);

*Dawson v. Colvin*, No. SA-15-CV-761-PM, 2016 WL 844836, at *8 n.121 (W.D. Tex. Mar. 1,

2016) (relying on Q&A 09-036 to support using Listing 11.03 for migraine headaches);

*Mesecher v. Berryhill*, No. 4:15-CV-0859-BL, 2017 WL 998373, at *4 (N.D. Tex. Mar. 15,

---

[7] The undersigned notes that these are similar to the examples provided for review of
migraines under the current listing 11.02. *See* POMS § DI 24505.015(B)(7)(b)(Second

2017).

At step three, the ALJ is required to "discuss the evidence offered in support of [a

claimant's] claim for disability and to explain why [the ALJ] found [the claimant] not to be

disabled at that step." *Audler*, 501 F.3d at 448 (citing 42 U.S.C. § 405(b)(1)). In *Audler*, the Fifth

Circuit vacated and remanded an ALJ decision which failed to explain why a claimant's

impairment did not meet or equal the criteria of a listed impairment at step three. *Id.* The ALJ's

step three finding in *Audler* was confined to one sentence:

> The medical evidence indicates that the claimant has status post lumbar
> laminectomy, cervical disc herniation, headaches and chronic neck and back pain,
> impairments that are severe within the meaning of the Regulations but not severe
> enough to meet or medically equal one of the impairments listed in Appendix 1,
> Subpart P, Regulations No. 4.

*Id.* at 448.

The Fifth Circuit noted "[t]he ALJ did not identify the listed impairment for which

Audler's symptoms fail to qualify, nor did she provide any explanation as to how she reached the

conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment." *Id.*

The Fifth Circuit found that such "a bare conclusion" was "beyond meaningful judicial review,"

and violated "the explicit provision of the Social Security Act requiring the ALJ to discuss the

evidence in support of a disability claim and explain the reasons for denial." *Id.* (citing *Clifton v.

Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); 42 U.S.C. § 405(b)(1)).

Here, the ALJ's step three analysis was likewise incomplete. While the ALJ

acknowledged the 11.00 section of the Listings in general, it is unclear if he specifically

considered Listing 11.03. The ALJ's discussion at step 3 is as follows:

---

Example); *see* supra footnote 6.

Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Supart P, Appendix 1. . . . In making this finding the undersigned [ALJ] has given particular consideration to the claimant's impairments (see Section 1.00 et seq., Musculoskeletal Disorders and see Sections 11.00 et seq., Neurological Disorders). Despite the claimant's combined impairments, the medical evidence does not document a listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, including or in combination. No State agency reviewer/consultant/examiner has concluded that the claimant has an impairment[] severe enough to meet or equal a listing. No subsequent evidence has been submitted that would alter the previous conclusion that the claimant has no impairments severe enough to meet or equal a listing. No treating physician has credibly concluded that the claimant has an impairment or combination thereof severe enough to meet or equal a listing.

[11] at 17-18.

Based on his discussion, there is simply no way for this Court to determine whether the ALJ used substantial evidence to make this determination or compared Plaintiff's migraines to Listing 11.03 at all. *See Audler*, 501 F.3d at 448 (requiring the ALJ to discuss the evidence in support of a disability claim and explain the reasons for denial.)

Migraine headaches must be documented by detailed description from a physician of a typical headache event (intense headache with more than moderate pain and with associated migraine characteristics and phenomena) that includes a description of all associated phenomena; for example, premonitory symptoms, aura, duration, intensity, accompanying symptoms, and effects of treatment.; occurring more frequently than once weekly, counting characteristic headache events. Q&A 09-036 sets out the following non-exclusive list of clinically accepted indicators of the diagnosis: (1) a headache lasting 4 to 72 hours if untreated or unsuccessfully treated; (2) unilateral, pulsating (throbbing) quality and moderate or severe pain, worsened by routine physical activity or causing avoidance of such activity; and (3) experiencing nausea,

vomiting, photophobia, or phonophobia during the headache (only one needs to be experienced). The migraines must have: (1) alteration of awareness, which means a condition of being inattentive, or not cognizant of one's surroundings and external phenomena as well as one's personal state or (2) significant interference with activity during the day that may result from, e.g., a need for a darkened, quiet room; lying down without moving; or a sleep disturbance that impacts on daytime activities. *See* Q&A 09-036 [13-1]; *accord Mesecher v. Berryhill*, No. 4:15-CV-0859-BL, 2017 WL 998373, at \*4 (N.D. Tex. Mar. 15, 2017); *Dunlap*, 2016 WL 5405208, at \*9; *Plummer v. Colvin*, No. CV-13-08282-PCT-BSB, 2014 WL 7150682, at \*10 (D. Ariz. Dec. 16, 2014); *Miller v. Astrue*, No. CV-09-01871-PHX-JAT, 2011 WL 671752, at \*12 (D. Ariz. Feb. 17, 2011); *see also, Dawson v. Colvin*, No. SA-15-CV-761-PM, 2016 WL 844836, at \*8 (W.D. Tex. Mar. 1, 2016).

As early as 2001, records reflect that Plaintiff had been treated for tension headaches and migraines. In 2001, Plaintiff had six medical appointments about her headaches. Plaintiff went to a Compensation and Pension Exam on November 25, 2008. ([11] at 274.) After that exam and a review of Plaintiff's previous medical records, Dr. Linden diagnosed Plaintiff with migraine headaches and noted that it "could interfere with her occupation and daily activities." *Id.* Dr. Linden noted that the effects of a migraine would prevent Plaintiff's ability to perform usual daily activities including chores, exercise, traveling, feeding, and grooming. *Id.*

On January 15, 2009, Plaintiff visited the VA Medical Center where she was seen by Vikram S. Brar, M.D., and reported floaters in her eyes, dizzy spells, and migraines. ([11] at 1279-81.) Dr. Vikrant noted Plaintiff's history of migraines. *Id.* On March 26, 2009, Plaintiff presented to Kathleen French, M.D. at the VA Medical Center. ([11] at 269-70.) Dr. French

noted that Plaintiff's service records indicated that she was treated for severe headaches while she was in the service, and that she continues to experience migraines. *Id.* The Doctor also noted that she complained of continuing migraines and that she claimed an "aura of sharp pain above her right eye, photosensitivity, phonophobis [sic], nausea, [and] throbbing/stabbing pain [in her] entire head. She noted Plaintiff claimed five headaches per month that lasted from 3 days to two weeks "with [the] majority of the [them] prostrating." *Id.* [8]

Plaintiff's medical records reflect continued medication for migraines throughout the remainder of 2009 and throughout 2010. *See* ([11] at 250-51; 486; 1249; 1276; 1286-8.) Specifically, on June 15, 2009, Dr. Terri Smith noted that Plaintiff complained that her right eye became blurred and she experience a migraine which lasted several hours. ([11] at 1286.) On January 4, 2011, Plaintiff presented to Marie Brumbaugh, RN at the VA Medical Center and reported having migraines occur about once a week. ([11] at 730.) Brumbaugh also noted Plaintiff's single episode of blurry vision that resolved with sleeping. *Id.* On March 9, 2011, Plaintiff visited the VA Medical Center and presented to Anne M. Hastings, ARNP with complaints of migraines every day; Plaintiff reported that she could not move when the migraines occurred and that despite continuous medication she experienced poor to no response. ([11] at 253-56.)

Throughout 2011, Plaintiff continued to complain of migraines that did not subside with medication. ([11] at 244-256; 361(Placed phone call to medical provider on 8/15/2011 reporting a migraine that is "really bad, never had one like this for so long.")). On September 14, 2011,

---

[8] Prostration means causing extreme exhaustion or powerlessness. *Dorland's Illustrated Medical Dictionary* 1599 (29th ed. 2000).

Plaintiff reported to Dr. Bryskin that her headaches were daily and her medication was not

helping. ([11] at 357-59.) On December 9, 2011 Plaintiff received a brain scan, and on December

12, 2011, Dr. Bryskin opined that the MRI brain scan was normal. ([11] at 331.) On December

28, 2011, Plaintiff reported 3 migraines a week to Dr. Bryskin and also reported that Topiramate

was not helping with the migraines. ([11] at 322.) Dr. Bryskin noted that the Topirmate was

ineffective and made Plaintiff sleepy. Dr. Bryskin discontinued Topirmate and replaced it with

Fioricet, placed Plaintiff back on Amitriptyline, and continued her on Maxalt. ([11] at 1033-36.)

Plaintiff continued to report problems and take medicine for her migraines from 2012

through 2014. ([11] at 206; 238-39; 1025-32;1447;1539;1559). During the hearing on May 23,

2014, Plaintiff wore sunglasses and testified that she was sensitive to the sunlight and that it

caused her to have headaches 3 to four times a week. ([11] at 50.) However, she differentiated

between her headaches and migraines explaining that when she had headaches they could lead to

migraines. ([11] at 51-53.) Plaintiff testified that during the migraines, she stayed in bed all day

to avoid throwing up. *Id.* She also testified that she was in bed four days every month because of

migraines. ([11] at 53.)  She also refrained from eating during her migraines because the

migraines made her regurgitate. ([11] at 56.) When asked what kind of things caused her to have

a headache that turned into a migraine, Plaintiff said that noise, light, and sometimes pain

medication triggered the migraines. ([11] at 52.)

After the hearing, on May 30, 2014, Plaintiff visited Welwin Liu, M.D. at the VA

Medical center complaining of recurrent severe headaches not relieved by current medications.

([11] at 1673-75.) Dr. Liu reviewed the result of Plaintiff's head CT, which he described to be

within normal limits. *Id.* He also indicated that Plaintiff had rebound migraine headaches due to

overuse of Fioricet, and she was to "taper off Fioricet." He increased her Elavil dosage to help

prevent the headaches and discussed how a proper migraine diet, light exercises and maintaining

a regular sleep schedule could be a preventative measure. ([11] at 1675.) Plaintiff's medical

records from after the hearing, through June 17, 2014, including this visit were submitted into

evidence prior to the ALJ's decision.

The ALJ opined that "no acceptable medical source has mentioned findings equivalent in

severity to the criteria of any listed impairment, including or in combination." [11] at 17-18.

However, the Court is unable to determine if the ALJ's listing determination of Plaintiff's

migraines was based on substantial evidence because of the lack of discussion. *See Dawson v.*

*Colvin*, No. SA-15-CV-761-PM, 2016 WL 844836, at *10 (W.D. Tex. Mar. 1, 2016); *Audler*,

501 F.3d at 448 (requiring the ALJ to discuss the evidence in support of a disability claim and

explain the reasons for denial.) The medical records contain multiple descriptions of Plaintiff's

migraines from physicians and neurologists and the described frequency of the migraines is

consistently more than once per week. The descriptions include photosensitivity, phonophobia,

and nausea. Moreover, Plaintiff has taken prescribed medication for her headaches for many

years. The medical records also indicate that the headaches may significantly affect Plaintiff's

activity when they occur.

While the ALJ thoroughly outlined Plaintiff's medical history for the RFC, his discussion

at step 3 is conclusory, and his discussion of the Plaintiff's RFC does not demonstrate that the

ALJ considered Listing 11.03. Based on the record, the undersigned cannot determine if the

ALJ's finding that Plaintiff's migraine headaches were not medically equivalent to any listed

impairment was supported by substantial evidence. Accordingly, the undersigned recommends

this case be remanded for additional proceedings at Step 3.

***Issue No. 2: Whether the ALJ erred when he included no limitation in his RFC determination for when Plaintiff does have a migraine?***

Because the undersigned has concluded that remand is appropriate, there is no need to further determine whether the ALJ erred in other respects. The undersigned will note, however, that a "failure of the ALJ to include, in the RFC assessment, any limitation as a result of [an impairment] he found to be a severe impairment" may also require reversal. *Martinez v. Astrue*, No. 2:10-CV-0102, 2011 WL 4128837, at *6 (N.D. Tex. Sept. 9, 2011) (recommendation of Mag. J.), adopted by 2011 WL 4336701 (N.D. Tex. Sept. 15, 2011); *accord Walker v. Colvin*, No. 3:14-CV-1498-L (BH), 2015 WL 5836263, at *15 (N.D. Tex. Sept. 30, 2015) (discussing *Martinez* and cases on both sides of the issue before finding that the ALJ had committed reversible error on the facts then before the court); *but see Carnley v. Colvin*, No. 3:12-CV-3535-N-BF, 2013 WL 5300674, at *9 (N.D. Tex. Sept. 20, 2013) (accepting recommendation of Mag. J. that distinguished *Martinez* on grounds that the VE had considered seizure limitations even though the ALJ had not incorporated such limitations in the RFC determination); *Martinez v. Colvin*, No. 4:12-CV-542-A, 2013 WL 5227060, at *7 n.17 (N.D. Tex. Sept. 16, 2013) (distinguishing the 2011 *Martinez* case on grounds that the medical evidence did not support any additional limitation); *Adams v. Colvin*, No. 4:12-CV-490-A, 2013 WL 5193095, at *9 (N.D. Tex. Sept. 13, 2013) (same). The circumstances of some cases require "some explanation in the record as to how [a claimant] can suffer from a severe impairment, which by definition must have more than a minimal effect on the [claimant's] ability to work, and why such severe impairment would not have had any limitation" on the claimant's ability to work. *Martinez*, 2011

WL 4128837, at *7.

Plaintiff does not dispute that the ALJ's RFC finding contains a limitation included in order to attempt to prevent migraines - that Plaintiff should avoid bright lights while working. ([11] at 18.) However, Plaintiff contends that the RFC does not account for her ability to work when a migraine actually occurs. The ALJ did discredit somewhat Plaintiff's representation regarding her physical limitations and her ability to function. However, in the RFC analysis, the ALJ repeatedly references brain scans showing no intracranial processes to discount Plaintiff's migraines. ([11] at 20-25.) Defendant also argues that "Plaintiff neglects to note that the treating sources she cites [for her migraines] found no abnormalities upon examination, and that doctors "repeatedly found Plaintiff normal from a neurological standpoint." *See* [15] at 6.

However, the "absence of unequivocal evidence of migraine headaches does not mean that [Plaintiff] does not suffer from them, as there is no 'dipstick' laboratory test for such headaches." *Guinn v. Chater*, 83 F.3d 431, 1996 WL 211140, at *3 (10th Cir. April 30, 1996) (*citing Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir. 1993); *see Pennington v. Chater*, 113 F.3d 1246 (Table), 1997 WL 297684, at *3 (10th Cir. 1997)( "We are aware of no medical procedures to objectively evaluate either the severity of a migraine or pain; and where no such conclusive tests exist, the failure to produce such test results is surely an improper basis for discrediting a claimant's uncontroverted testimony."); *Ortega v. Chater*, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996) ("Since present-day laboratory tests cannot prove the existence of migraine headaches, as is also the case with many psychiatric and psychological impairments, [signs and symptoms sufficient to justify the diagnosis and treatment of migraine headaches] are often the only means available to prove their existence."); *Stebbins v. Barnhart*,

No. 03-C-0117-C, 2003 WL 23200371, at *2 (W.D. Wis. Oct. 21, 2003)("[The ALJ] erred [] in basing his decision on the lack of measurable physical findings because the record contained no evidence that migraine headaches can be detected or measured by imaging techniques, laboratory tests or physical examination."). *Strickland v. Barnhart*, 107 F. App'x 685, 689 (7th Cir. 2004)("The ALJ also appears to have thought, incorrectly, that the neurological test results somehow undercut [Plaintiff]'s claims [about her migraines]. In fact, nothing in the record suggests that these tests can confirm either the existence of migraines or their likely severity. If anything, [the doctor's] conclusion that [Plaintiff] suffered from severe migraines even in the face of the normal test results shows that there are no diagnostic tests that work particularly well for migraines."). Indeed, even though Dr. Liu indicated Plaintiff's head scan was normal in May of 2014, he still prescribed new medication for Plaintiff's headaches and migraines and gave Plaintiff advice on how to lessen them. ([11] at 1033-36.)

The ALJ, while not specifically stating such, seemed to discount Plaintiff claimed frequency of migraines and headaches as he stated she had headaches 3-4 headaches a week for the past 3 years, but only had 3 per month before that. *See* ([11] at 23.) However, medical records as early as 2009 reflect that Plaintiff complained to medical personnel of headaches "5 days per month lasting from 3 days to two weeks." ([11] at 270.) The ALJ did not determine how many migraines that he believed Claimant experienced on a weekly basis, and how this would affect the RFC. If the ALJ determines Claimant's RFC on remand, he should identify the particular limitations caused by her migraine headaches or explain how/why that severe impairment does not result in any additional limitation on her ability to work.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is not supported by substantial evidence and did not utilize the correct legal standards. It is, therefore, the recommendation of the undersigned that Defendant's Motion to Affirm the Commissioner's Decision [14] be denied, and that the case be remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g), for further administrative proceedings.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the Judge, the Magistrate Judge and the opposing party. The District Judge at the time may accept, reject, or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 7th day of August, 2017.

s/ Michael T. Parker
United States Magistrate Judge